In The

# United States Court Of Appeals
## For The D.C. Circuit

### UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

### THOMAS WEBSTER,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————

## REPLY BRIEF OF APPELLANT

———————

**Elizabeth A. Brandenburg**
**Marcia G. Shein**
**LAW FIRM OF SHEIN,**
  **BRANDENBURG & SCHROPE**
**2392 North Decatur Road**
**Decatur, GA 30033**
**(404) 633-3797**

*Counsel for Appellant*

**Gibson Moore Appellate Services, LLC**
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES ........................................................................................ ii

STATEMENT OF THE CASE (Government's Brief 1-10) ......................................1

    "Background – *The Government's Case*" (Government's Brief 2-6) .................................................................................................................1

    "Webster's Sentencing" (Government's Brief 7-11) ..............................1

ARGUMENT .......................................................................................................... 2

    I.    Venue ...................................................................................... 2

        B. 1.  Size and Characteristics of District of Columbia's Jury Pool  (Government's Brief, 25-31) ........................... 2

        2.     Media (Government's Brief 31-34) ................................... 3

        C.     Actual Prejudice (Government's Brief 36-43) ................... 4

    II.   Cross-Examination of Officer Rathbun (Government's Brief 43-49) ........................................................................... 5

    III.  § 111 Instruction (Government's Brief - 49-54) ........................10

    IV.  Sentence (Government's Brief 55-61) ...........................................11

CERTIFICATE OF COMPLIANCE ...........................................................................12

CERTIFICATE OF SERVICE ..................................................................................13

## TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

*Johnson v. United States,*
    520 U.S. 461 (1997) ............................................................. 6

*Murray v. Schriro,*
    882 F.3d 778 (9th Cir. 2018) ........................................... 3

*Strickland v. Washington,*
    466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ..................6, 7

*United States v. Anderson,*
    881 F.2d 1128 (D.C. Cir. 1989) ........................................ 8

*United States v. Brown,*
    504 F.3d 99 (D.C. Cir. 2007) ..............................................11

*United States v. Cronic,*
    466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) .....................7

*United States v. Dennis,*
    183 F.2d 201 (2d Cir. 1950), *aff'd*, 341 U.S. 494 (1951)........................ 2

*United States v. Haldeman,*
    559 F.2d 31 (D.C. Cir. 1976) ...................................... 2, 3, 4

*United States v. Narog,*
    372 F.3d 1243 (11th Cir. 2004) ...........................................11

*United States v. Taylor,*
    497 F.3d 673 (D.C. Cir. 2007)........................................... 6

*United States v. Weissman,*
    899 F.2d 1111 (11th Cir. 1990) ...................................................................11

*United States v. Wilson,*
    605 F.3d 985 (2010) .......................................................................... 8

**STATUTES:**

18 U.C.C. § 111.........................................................................................10

18 U.C.C. § 111(b) .................................................................................. 10, 11

**"Background – *The Government's Case*" (Government's Brief 2-6).**

The Government, throughout its brief, attempts to lump Mr. Webster in with others present at the Capitol on January 6, 2021. The Government details the breach of the Capitol building itself, just as it attempted to admit evidence of such at the trial, when there was no allegation or evidence that Mr. Webster entered or attempted to enter the Capitol. (Government's Brief 3; Day 2 AM 82-84; JA644-646; Exh. 200.1). Further, the Government spent significant time at trial detailing the security precautions put in place before that date, but presented no evidence that Mr. Webster was aware of or saw any signs or snow-fencing. The only barrier Mr. Webster was aware of was the bike rack that Rathbun was the first to cross during their encounter. Gov Ex. 205.

**"Webster's Sentencing" (Government's Brief 7-11).**

The trial court stated at sentencing that Rathbun's body worn-camera "speaks for itself," without regard to what the other videos of the incident detail, especially the several times Rathbun crossed over the bike rack before Mr. Webster made any advances to or over the rack. Gov Ex. 205.

**ARGUMENT**

## I.   Venue

### B. 1. Size and Characteristics of District of Columbia's Jury Pool  (Government's Brief, 25-31)

The Government contends that "a 'community's voting patterns' are not 'at all pertinent to venue,'" quoting *United States v. Haldeman*, 559 F.2d 31, 60, 64 n. 43 (D.C. Cir. 1976) (en banc). However, the quote from a footnote in *Haldeman* actually says that the Second Circuit case cited by the dissent on the significance of voting patterns, *United States v. Dennis*, 183 F.2d 201 (2d Cir. 1950, aff'd, 341 U.S. 494 (1951), does not contain "any intimations that a community's voting patterns are at all pertinent to venue." This does not mean that voting patterns are not pertinent, just that the *Dennis* case did not say they were. The Government has mischaracterized the quote, overreaching its significance.

The dissent in *Haldeman* did not claim that *Dennis* claimed voting patterns are pertinent, but rather distinguished *Dennis*, a Second Circuit case in exploring how the venue in D.C. is unique:

> This case differs from *Dennis* in that in Washington, D.C., there most emphatically *does* appear to be a unique island of political bias, and in this case, with its massive political aspects, it would be futile to ignore the possibility that prior to the trial potential jurors may have formed prejudgments of the case based on their political affiliation or leanings.

*United States v. Haldeman*, 559 F.2d 31, 161 (1976). Since *Haldeman* in 1976, the political concentration of Washington, D.C. has only increased, and the dissent's observation stands true: "The public record is that Washington, D.C. is unique in its overwhelming concentration of supporters of the Democratic Party, as opposed to the Republican Party to which the defendants here belonged." *Id.* at 160.

Further, while *Haldeman* was a politically-centered case, this case puts election and voting issues in the forefront as the whole reason for the events of January 6th. The voting patterns and political climate of Washington, D.C. cannot be ignored when they are so unique and significant.

## 2. Media (Government's Brief 31-34).

The Government contends that the pretrial media coverage in this case did not "constitute a 'barrage of information that would be inadmissible at trial.'" Government's Brief 32, *quoting Murray v. Schriro*, 882 F.3d 778, 805 (9th Cir. 2018). However, the pretrial coverage focused on the breach of the interior of the Capitol, in which there was no evidence that Mr. Webster took part, although the Government sought, and was prevented, at trial from admitting evidence of such. Day 2 AM 82-84. JA644-646. The Government also cited to *Haldeman* that the " 'overwhelming bulk of the publicity dealing with the [Watergate] conspiracy related to information properly brought of

at trial.'" *Id. quoting Haldeman*, 559 F.2d at 61 n. 34. The same cannot be said in this case after the Government's attempt to admit evidence of irrelevant evidence of the breach and the pretrial coverage of the same in an attempt to exacerbate Mr. Webster's actions and lump him in with those who participated in the breach of the Capitol.

## C.   Actual Prejudice (Government's Brief 36-43).

The Government points out that the seated jurors stated they could "set aside" their political views or be "fair and impartial." (Government's Brief 40). The fact that each one of these jurors had to explicitly state such shows the unique problem in this case of bias and exposure. Further, the court curtailed counsel in phrasing questioning of the jurors in any way other than these characterizations. Day 1 PM 3-4. JA338-339. This limiting of questioning to "presumptions and burdens" leads the jurors to agree to follow the law even when there was real concern that they would have trouble doing so. Especially in the case of juror 1156 who testified that Appellant would be at a disadvantage with him because he "feel[s] strongly about the events." Day 1 AM 91-92. JA328-329. "[Appellant] [does not] start off with this as like a clean slate, I guess. I don't think of this as like a zero-zero game to start." Day 1 AM 93. JA330. He did not think he could start from a presumption of innocence due to having "strong feelings about this. I believe that folks who were there

did something wrong. . ." Day 1 AM 94. JA331 The court's pointed attempt to rehabilitate this juror and ultimately deny the motion for cause was extended over three pages of the transcript. Day 1 AM 92-96. JA329-333. Although this juror did not sit on the jury, the court's handling of the juror's questioning and the instruction to counsel following the questioning caused counsel to not question any subsequent jurors in the same way, likely not uncovering similar biases that should have struck this juror for cause.

## II.  Cross-Examination of Officer Rathbun (Government's Brief 43-49)

Rathbun was investigated for a shooting and body-worn camera policy violation. ECF# 59, 4). JA77. He shot a suspect and activated his camera later, after making contact with the suspect. *Id.* The Government sought to limit the cross-examination of Rathbun regarding this incident. (ECF # 59). JA74-93. At the hearing on this matter, Webster's counsel raised DOJ and N.R.'s possible biased entanglement in investigating an officer who is a witness in a pending case: "I'm not casting any aspersions to the Department of Justice. But they've been very assertive in making sure that their relationship with Rathbun and them having conduct – cleared him in a separate shooting and his role in this case not be made part of public consumption. . . I think the public needs to know, just like the jury in this case would know, that there may have been a process in play where the Department of Justice clearing this

officer because of his role in this case . . ." PTC 62. JA229. Contrary to the Government's assertion, without citing to the record, (47) that Webster waived this issue, this argument by counsel preserved the issue that even a completed investigation is relevant to Rathbun's bias.

However, even if Counsel's actions at trial waived this issue, this was plain error and constituted ineffective assistance of counsel which is clear from the record.

Under plain error review, reversal can take place only if (1) the district court committed error; (2) the error is "plain"; (3) the error affects the defendant's "substantial rights"; and (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Taylor*, 497 F.3d 673, 676 (D.C. Cir. 2007) (formatting modified) (quoting *Johnson v. United States*, 520 U.S. 461, 466-467 (1997)).

The standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) governs claims of ineffective assistance of counsel. To succeed on an ineffective-assistance claim, a defendant must show both deficient performance by his attorney and prejudice. *Strickland*, 466 U.S. at 687. *Strickland* requires a party claiming ineffective assistance of trial counsel to show :(1) that "counsel's representation fell below an objective standard of reasonableness," (the performance prong); and (2) that

the "deficiencies in counsel's performance…[were] prejudicial to the defense" (the prejudice prong). *Id.* at 668, 687-88, 692. To establish deficient performance, the moving party must show "specific errors by trial counsel." *United States v. Cronic*, 466 U.S. 648, 666, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). To establish prejudice, the moving party must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Judicial scrutiny of counsel's performance must be highly deferential," and defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Counsel intended to preserve this issue at the pretrial hearing, and then arguable abandoned it once the Government claimed all investigations were complete even though the relevance of delving into Rathbun's bias remained whether the investigations were complete or not. The Department of Justice investigated both Webster's case and Rathbun's shooting. Rathbun is a witness in the first and the target in the second. His bias in wanting to be helpful to the department in the prosecution did not disappear when the investigations were reportedly closed. He was already on the record, had already spoken to investigators and prosecutors, and was too far down the road to turn back, even if he was, by that point, in the clear.

The Government attempts to distinguish *United States v. Anderson*, 881 F.2d 1128, 1142-43 (D.C. Cir. 1989) from this case because the witness in that case had a murder indictment which was dismissed without prejudice, but without a cooperation agreement. Because the indictment had been dismissed without prejudice it could be reinstated at anytime and the court held that was fertile cross-examination ground. *Id.* There is no difference here, Rathbun was under investigation and the Department of Justice had declined to charge him, making that decision in the same time frame Webster was being prosecuted. His investigation was similarly subject to being reinstated as the witness's indictment in *Anderson*. This affects Webster's substantial 6th Amendment right to confrontation. It is plain error and a mistake of counsel if not preserved which is prejudicial.

The government also argues that *United States v. Wilson*, 605 F.3d 985, 1006 (2010) controls in this case, where it actually supports the admission of the investigation as a relevant to potential bias: "Presumably, based upon her suspension, [the witness] could have been motivated to testify falsely against appellants in order to curry favor with the government. But the fact that she was being investigated at all provided that potential motive." *Id.*

The absence of this line of questioning caused substantial prejudice. Although there was video footage of the encounter between Webster and Rathbun, it was difficult to see and Rathbun's interpretation and testimony was incredibly impactful to this evidence. In fact, he and others testified contradictorily to some of the video footage. As Webster approached the bike rack, Rathbun began gesturing with his hand almost immediately; his arm crosses the barrier 7 times while Appellant holds the flagpole away from Rathbun. Gov Ex. 205. The seventh time Rathbun's arm crosses the barrier, he leans toward Webster, and only then does Webster's hand come forward to the bike rack. Gov. Ex. 205 2:28:30. Rathbun then appears to rear back to strike Webster, causing him to move back with significant momentum, and only then does Webster swing the flagpole. Gov. Ex. 205. Again in this video, Rathbun can be seen going around the bike rack towards Webster, although he testified that he was backing away from the broken perimeter. Gov. Ex. 205 2:28:47; Day 3 AM 51. JA870. Detective Lauderdale testified that Webster struck Rathbun with the flagpole although that is not in any video. (Day 2 PM 71). JA767.

Rathbun's testimony was critical to the case, and his impeachment with his potential bias in helping the very government agency investigating

him was substantially relevant, and its exclusion resulted in a reasonable likelihood that the result would have been different.

## III.   § 111 Instruction (Government's Brief - 49-54)

The Court, in its instruction, required a finding by the jury of physical force or intent to commit another felony to convict Webster of § 111(b). The extra element is to Webster's detriment in that the jury was then susceptible to finding that Webster violated § 111(b) only in the events that happened after he no longer possessed the flagpole. The jury was instructed that "[a]n object is a deadly or dangerous weapon if it is capable of causing serious bodily injury or death to another person and the defendant used it in that manner. In determining whether the object is a deadly or dangerous weapon you may consider both physical capabilities of the object used and the manner in which the object is used." Day 5 PM 25. JA1345. The flagpole was not mentioned in the instruction, although Lauderdale falsely testified Webster used it to make physical contact. (Day 2 PM 71). JA767. The jury could have found that Webster's hands and body or the chin strap of the gas mask and helmet were a deadly or dangerous weapon as the evidence authorized them to find that "the manner in which" Webster used his hands and body rendered them "capable of causing serious bodily injury or death."

Webster was charged with using a flagpole as a deadly or dangerous weapon, but the jury was not instructed as to which item was alleged to be deadly or dangerous. This Court has held that *United States v. Brown*, 504 F.3d 99, 103 (D.C. Cir. 2007) was not analogous to *United States v. Narog*, 372 F.3d 1243, 1249-50 (11th Cir. 2004) and *United States v. Weissman*, 899 F.2d 1111, 1116 (11th Cir. 1990) because the indictment included the means of committing the offense charged as instructed by the jury, not creating a danger that the defendant was convicted on grounds not charged in the indictment.

The district court's instruction added the physical contact element to a violation of § 111(b), so the jury was required to find physical contact *and* a deadly or dangerous weapon, making it substantially likely that they would look beyond the use of the flagpole in the encounter to a moment when both elements could be found according to the evidence.

## IV.  Sentence (Government's Brief 55-61).

Webster relies on the argument as presented in his opening brief.

/s/ Elizabeth A. Brandenburg
Elizabeth A. Brandenburg
Marcia G. Shein
LAW FIRM OF SHEIN,
  BRANDENBURG & SCHROPE
2392 North Decatur Road
Decatur, GA  30033
(404) 633-3797

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains <u>2,432</u> words, excluding the parts of the brief exempted by Rule 32(f).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in <u>Georgia 14-point font</u>.

/s/ Elizabeth A. Brandenburg
Elizabeth A. Brandenburg
Marcia G. Shein
LAW FIRM OF SHEIN,
  BRANDENBURG & SCHROPE
2392 North Decatur Road
Decatur, GA  30033
(404) 633-3797

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(d) and Cir. R. 25, that on November 22, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

/s/ Elizabeth A. Brandenburg
Elizabeth A. Brandenburg
Marcia G. Shein
LAW FIRM OF SHEIN,
 BRANDENBURG & SCHROPE
2392 North Decatur Road
Decatur, GA 30033
(404) 633-3797

*Counsel for Appellant*